UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LINDA KODAMA,

           Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

           Defendant.

CASE NO. 2:15-CV-01566-RJB-DWC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: May 13, 2016

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's application for Disability Insurance Benefits ("DIB"). The parties have consented to proceed before an United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 5.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did not err  in evaluating the opinions of four of Plaintiff's treating and examining physicians and psychologists. Further, the ALJ did not err in assessing Plaintiff's credibility, evaluating the lay witness testimony, and in finding there were a significant number of jobs in the national and

1  local economies Plaintiff was able to perform.  Therefore, the undersigned recommends the entry

2  of an Order affirming the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g).

3  **PROCEDURAL& FACTUAL HISTORY**

4      On August 29, 2012, Plaintiff filed an application for DIB. *See* Dkt. 7, Administrative

5  Record ("AR") 170. Plaintiff alleges she became disabled on March 9, 2012, due to a concussion

6  which precipitated migraine headaches and ongoing cognitive deficits. *See* AR 170, 186, 202-11.

7  Plaintiff's application was denied upon initial administrative review and on reconsideration. *See*

8  AR 69, 76. A hearing was held before an ALJ, Larry Kennedy, on October 2, 2013, at which

9  Plaintiff, represented by counsel, appeared and testified. *See* AR 34.

10      On October 25, 2013, the ALJ found Plaintiff was not disabled within the meaning of

11  Sections 216(i) and 223(d) of the Social Security Act. AR 31. Plaintiff's request for review of the

12  ALJ's decision was denied by the Appeals Council on August 28, 2015, making that decision the

13  final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20

14  C.F.R. § 404.981, § 416.1481. On July 14, 2015, Plaintiff filed a complaint in this Court seeking

15  judicial review of the Commissioner's final decision.

16      Plaintiff argues the denial of benefits should be reversed and remanded for further

17  proceedings, because the ALJ failed to: 1) properly evaluate the medical opinion evidence; 2)

18  provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's

19  testimony; 3) provide germane reasons for rejecting the lay witness testimony; and 4) meet his

20  burden of demonstrating there were other jobs in the national economy Plaintiff could perform.

21  Dkt. 9, p. 1.

22

23

24

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

**DISCUSSION**

I.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

     **A.  Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject

1   'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71

2   (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter*

3   *v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons

4   for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

5           **B.  Application of Standard**

6           The ALJ assigned Plaintiff the residual functional capacity to perform a full range of

7   work at all exertional levels, except Plaintiff was limited to: performing simple, routine tasks and

8   following short, simple instructions; performing work which needs little or no judgment;

9   performing simple duties which can be learned on the job in a short period. AR 20. The ALJ also

10  limited Plaintiff to a predictable work environment with few work setting changes, found

11  Plaintiff should not be required to read detailed or complex instructions, write narrative reports,

12  or use the computer for more than one hour. AR 20. However, the ALJ found Plaintiff could

13  occasionally[1] read simple checklists or documents and fill out simple forms or documents, and

14  found Plaintiff would have the average ability to perform sustained work activities ("i.e., can

15  maintain attention and concentration; persistence and pace) in an ordinary work setting on a

16  regular and continuing basis within customary tolerances of employers' rules regarding sick

17  leave and absences. AR 20. Plaintiff contends this residual functional capacity finding was

18  erroneous, as the ALJ improperly rejected the more restrictive limitations contained in four

19  medical opinions rendered by a treating psychologist, Dr. Raymond Parker, an examining

20  psychologist, Dr. James Keyes, a treating physician, Dr. Benjamin Podemski, and one treating

21  licensed clinical social worker, Ms. Selene David.

22  ───────────────────

23          [1] The ALJ indicated he used "occasional" in the residual functional capacity "as it
    commonly defined as being from time to time or not regularly. The term occasional is not being
24  used in this sentence as defined in the SCO." AR 20, n. 3 & 4.

1              *1.Raymond Parker, Ph.D.*

2          Dr. Parker examined Plaintiff and conducted neuropsychological testing on May 22,

3    2013. AR 765-68. Dr. Parker indicated Plaintiff presented "a serious anxiety state" during the

4    evaluation, including notable hand tremor, hand wringing, and strained facial expression, though

5    Plaintiff worked diligently on the tests and procedures, and remained pleasant and cooperative

6    throughout the testing. AR 765-66. After administering numerous psychometric tests, and after

7    reviewing previous testing administered by Dr. Keyes, Dr. Parker concluded Plaintiff had "a

8    cognitive disorder with executive function deficit of unclear origin." AR 766. Dr. Parker

9    documented unusually and unexpectedly low nonverbal, perceptually based analysis, reasoning

10   and problem solving capabilities, and opined Plaintiff was likely "experiencing significant

11   difficulty in her day-to-day activities in terms of figuring out complicated things and responding

12   effectively to complex problem situations." AR 766. Dr. Parker encouraged Plaintiff "to take her

13   time, especially in non-routine, less familiar, more complex situations and control as much as she

14   can, the pace and flow of events and information to which she must respond." AR 768. Dr.

15   Parker also recommended Plaintiff engage in two "deactivation procedures," including

16   diaphragmatic breathing, to manage and reduce her anxiety. AR 767.

17         The ALJ considered Dr. Parker's opinion and gave it significant weight because:

18    [I]t was based on psychometric testing and a review of the claimant's
      performance on testing during Dr. Keynes's [sic] February 2013 psychological
19    evaluation (*See* [AR 823-27]). As Dr. Parker noted, the claimant's results
      indicated that the claimant did not have dementia, but that she would have
20    difficulty in more complex mental processing situations, and in day-to-day
      activities that require her to figure out complicated things and to respond
21    effectively to complex problem situations. Dr. Parker opined that the claimant
      would have particular difficulty with non-routine, complicated, unfamiliar,
22    unstructured situations that develop and change over time [AR 766-67]. I have
      incorporated Dr. Parker's opinion by limiting the claimant to performing only
23    simple, routine tasks, which needs little or no judgment and can be learned on-
      the-job in short period. Because of her difficulty responding to change, I have
24

limited her to a work environment that is predictable and involves few work setting changes.

AR 26-27. Plaintiff argues, however, the ALJ failed to incorporate all of Dr. Parker's opined limitations into the residual functional capacity finding. Dkt. 9, pp. 11-12. Specifically, Plaintiff argues the ALJ failed to include limitations pertaining to concentration, persistence, and pace, as well as limitations pertaining to Dr. Parker's recommended breathing exercises. *Id.* The Court disagrees.

While Dr. Parker's opined Plaintiff would have difficulty with non-routine, complicated, unfamiliar, unstructured situations, Dr. Parker's pacing and breathing suggestions were not couched as vocational "imperatives," but were only recommendations. Unlike an opined limitation or restriction, an ALJ is not required to address a physician's suggestions and recommendations in a residual functional capacity finding. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (finding no error in the fact the ALJ ignored certain recommendations proposed by a physician when discussing the physician's opinion and in crafting a residual functional capacity). *See also Rounds v. Comm'r, Soc. Sec. Admin.*, 795 F.3d 1177, 1185 (9th Cir. 2015); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

Citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C)(3), Plaintiff also argues a restriction to simple repetitive tasks is insufficient, as she may nonetheless have a marked limitation in concentration, persistence or pace if she cannot complete those tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or without undue interruptions or distractions. Dkt. 9, p. 12. However, the regulation relied upon by Plaintiff deals with assessing the severity of Plaintiff's mental impairments at Step Two of the Sequential Evaluation, and is therefore inapposite. Further, the Ninth Circuit has previously held an

1   "assessment of a claimant adequately captures restrictions related to concentration, persistence,

2   or pace where the assessment is consistent with the restrictions identified in the medical

3   testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). As in *Stubbs-*

4   *Danielson*, the ALJ limited Plaintiff to simple, repetitive tasks, and Dr. Parker's medical opinion

5   did not include an opined limitation or restriction concerning Plaintiff's concentration,

6   persistence, or pace. The ALJ did not err in his evaluation of Dr. Parker's medical opinion.

7                        *2. James Keyes, Ph.D.*

8          Dr. Keyes examined Plaintiff on March 1, 2013. AR 823. During this examination, Dr.

9   Keyes administered several psychological assessments on Plaintiff, including the WAIS-IV and

10  Heaton Modified Neuropsychological Screening. AR 824-26. According to Dr. Keyes, this

11  testing revealed a mix of low, average, and high scores, including a low average full scale IQ

12  score, average verbal comprehension, essentially impaired in perceptual reasoning, low average

13  working memory, and high average processing speed. AR 825-26. Dr. Keyes ultimately opined

14  "Ms. Kodama's fall in March of 2012 was really a 'red herring' in evaluating the concerns and

15  symptoms that she describes. The type of symptoms she reports experiencing and the notable

16  deficits she demonstrates in today's testing are more consistent with a broader type of cognitive

17  decline and dysfunction[.]" AR 826. Dr. Keyes ultimately suggested Plaintiff consult with his

18  medical group's neuropsychologist (Dr. Parker), who may "give some substantiation to her

19  feeling too disabled to continue working." AR 826. Dr. Keyes also made several

20  recommendations to Plaintiff which might assist her in coping with her cognitive difficulties,

21  including verbal labeling, using associative linkages, and using external memory sources, such as

22  lists, date books, calendars, and pocket-size recorders. AR 826.

23

24

1    Plaintiff argues the ALJ did not specifically address Dr. Keyes' opinion. Dkt. 9, p. 11.

2    However, the ALJ explicitly discussed Dr. Keyes' opinion that Plaintiff's cognitive issues were

3    not caused by her head injury, and noted Dr. Parker's opinion incorporated Dr. Keyes' clinical

4    testing and observations. AR 17, 19, 22, 26, 826. Further, the balance of Dr. Keyes' opinion is

5    couched as recommendations rather than limitations. As with Dr. Parker's opinion, the ALJ did

6    not err by failing to discuss these recommendations. *Valentine*, 574 F.3d at 691-92; *Rounds,* 795

7    F.3d at 1185; *Carmickle,* 533 F.3d at 1165. Finally, the ALJ cited Dr. Keyes' opinion as a basis

8    for finding Plaintiff should be restricted to routine tasks. AR 19. Thus, the ALJ did not fail to

9    address Dr. Keyes' opinion.

10                    *3.  Benjamin Podemski, M.D.*

11    Dr. Podemski was Plaintiff's treating physician from December 12, 2011 through

12    February 28, 2014. AR 859. *See also* AR 330-32. On February 28, 2014, Dr. Podemski opined

13    Plaintiff was experiencing intermittent, at times severe, unpredictable headaches as a result of

14    Plaintiff's March, 2012 head injury. AR 859. Dr. Podemski opined Plaintiff would need to lie in

15    a dark, quiet room in order to help alleviate her headaches. AR 859. Dr. Podemski also opined

16    Plaintiff would need to have breaks when she experiences a headache or leave work if the

17    headache is particularly severe. AR 859.

18    The ALJ gave little weight to Dr. Podemski's opinions Plaintiff would need to lie down

19    in a dark and quiet room, or take more than the normal number of breaks, for three reasons:

20    **First**, the treatment records consistently indicate that the triggers for her
      headaches are reading, writing, driving, and using the computer [AR 334, 490,
21    503, 516, 543]. This is because her posture worsens when she has to be in a
      prolonged focused position when engaging in such activities. [AR 545]. The
22    above residual functional capacity assessment accommodates the claimant by
      limiting her exposure to reading, writing, and using the computer. Furthermore, I
23    note that none of the jobs below would require the claimant to perform any
      significant reading, writing, driving, or computer work. **Second**, although the

24

1    claimant initially experienced some symptoms of nausea, vomiting, dizziness, and
     photophobia at the onset date of March 2012, subsequent medical records show
2    that these symptoms have since resolved [AR 331, 341, 595]. The claimant's
     symptoms therefore do not support a need to have to lie down or be in a dark,
3    quiet room. I also note that the claimant's headaches have been most responsive
     to other forms of treatment, including ice packs, massage, acupuncture, chewing
4    gum, and over-the-counter medication [AR 331, 543, 844]. **Third**, Dr. Podemski's
     opinion is inconsistent with the claimant's activities, which include attending
5    Zumba classes three to four times per week, a dance aerobics activity that requires
     frequent movement of the body and exposure to loud music. [AR 8F8, 17, 8F40,
6    43, 51, 55, 77, 114, 9F7, 33].

7    AR 26 (emphasis added). Plaintiff argues these were not clear and convincing reasons for

8    rejecting a treating physician's opinion. The Court disagrees.

9           As a threshold matter, Plaintiff argues the ALJ had to offer clear and convincing reasons,

10   rather than specific and legitimate reasons, in order to discount Dr. Podemski's opinion. *See*

11   Dkt. 9, p. 5. But, Dr. Podemski's opinion was contradicted by Dr. Guillermo Rubio, M.D. AR

12   80-82.[2] A conflicting opinion from any acceptable medical source, regardless of whether the

13   conflicting source is a treating, examining, or non-examining physician, will trigger the lower

14   standard of "specific and legitimate" reasons. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066-67

15   (9th Cir. 2006) (holding the conflicting check-box opinion of a non-examining physician meant

16   the ALJ was only required to offer specific, legitimate reasons to discount the opinion of an

17   examining physician). As the record contains conflicting medical opinions concerning Plaintiff's

18   limitations, the ALJ was only required to offer specific and legitimate reasons for discounting

19   Dr. Podemski's opinion.

20          Here, the ALJ correctly noted Plaintiff stated her headaches were triggered by reading,

21   writing, driving, and computer use, which the ALJ addressed in the residual functional capacity

22   _____

23          [2] The ALJ gave little weight to Dr. Rubio's opinion Plaintiff's headaches were not a severe
     impairment. AR 25. However, the ALJ did agree with Dr. Rubio that Plaintiff's impairments were not
24   disabling. AR 25.

1  finding.  AR 334, 490, 503, 516, 543. Further, as stated by the ALJ, other medical records reflect

2  Plaintiff's secondary headache symptoms of nausea, vertigo, and photophobia[3] had resolved. *See*

3  AR 331, 341, 595. Also, the ALJ noted Plaintiff's headaches responded well to other, more

4  conservative treatments such as over-the-counter medication, ice packs, and chewing gum. AR

5  331, 543, 844.  An ALJ may not substitute his or her judgment for that of a medical professional,

6  nor may an ALJ make independent medical findings. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th

7  Cir. 1996). However, an ALJ is responsible for resolving inconsistencies and ambiguities in the

8  medical evidence, including expert reports and opinions. *See Reddick*, 157 F.3d at 722.

9  Moreover, the consistency of a medical opinion with the whole record is an important factor in

10 weighing a medical opinion's credibility. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). These

11 were specific and legitimate reasons for the ALJ to discount Dr. Podemski's opinion, and were

12 supported by substantial evidence.

13         Also, the ALJ noted Plaintiff's participation in Zumba (aerobic dance) class, which

14 involved loud music and high intensity body movements, was inconsistent with Dr. Podemski's

15 recommendation Plaintiff lie down in a dark, quiet room to alleviate her headache symptoms.

16 Plaintiff argues she participated in Zumba because she was instructed by her physicians to

17 exercise. Dkt. 9, p. 6. *See* AR 328, 752, 846. However, while the record does contain physician

18 recommendations Plaintiff engage in *some* form of exercise, Plaintiff does not cite, nor can the

19 Court find, any evidence which would suggest Plaintiff's physicians recommended a loud, high-

20 intensity exercise such as Zumba. Plaintiff also argues she discontinued her Zumba lessons in

21 October, 2013 after developing a severe headache during one lesson. AR 516, 720. However,

22 even if the ALJ's reliance on Plaintiff's Zumba lessons was error, any such error was harmless as

23

24         [3] Photophobia is an abnormal visual intolerance of light. *Carpenter v. Shinseki*, 2011 WL
2066546, *1, n. 1 (Vet.App. 2011) (*citing* Dorland's Illustrated Medical Dictionary 1461 (31st ed. 2007)).

1   the ALJ had other specific and legitimate reasons to discount Dr. Podemski's opinion. *See*

2   *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

3        Because the ALJ offered specific and legitimate reasons, supported by substantial

4   evidence, for giving little weight to Dr. Podemski's opinion, the ALJ did not err.

5                    *4.Selene David, LICSW*

6        Ms. David has treated Plaintiff's ongoing bipolar disorder since October, 2005. AR 857.

7   On February 12, 2014, Ms. David wrote a letter opining Plaintiff has been sincerely devastated

8   by frustration and hopelessness with her sincere efforts to work, and has demonstrated problems

9   with concentration, pace, problem-solving, and missing work. AR 857. The ALJ gave Ms.

10  David' opinion little weight for three reasons:

11        **First**, Ms. David is not an acceptable medical source. ***Second,*** her report that the
          claimant's bipolar disorder has not [sic] made it impossible for the claimant to
12        work for any sustained amount of time is not supported. The claimant has a
          longstanding history of bipolar disorder, which has generally been stable with
13        medication [AR 751, 834]. Contrary to Ms. David's report, the claimant was able
          to work with her condition from June 1996 until March 2012 as a self-employed
14        grant consultant, a job she performed 50 hours per week [AR 194-201]. Since the
          alleged onset date of March 2012, treatment notes indicate some exacerbations of
15        depression due to situational stressors, but her responses on the PHQ-9
          nonetheless indicate that her symptoms are usually only in the mild to moderate
16        range. ***Third***, while the claimant has developed a cognitive disorder, which no
          doubt would make it difficult to sustain her past highly skilled and stressful job as
17        a grant writer, her performance on psychometric testing indicates that she retains
          the ability to perform more simple, routine tasks. Indeed, she has reported being
18        able to care for her personal hygiene and grooming prepare at least simple meals,
          perform household chores, and shop for groceries twice per week. She can drive
19        within her vicinity and use public transportation. She attends fitness classes three
          to four times per week, goes to the church and community center regularly,
20        immigrants [sic] English, and helps them study for the citizenship test [AR 202-
          212, 241-252, 473, 482, 505, 508-09, 516, 520, 542, 567, 579, 720, 746, 757, 824,
21        844]. The overall evidence indicates that the claimant has mental limitations due
          to her conditions, but not to the degree that she is precluded from performing any
22        type of job.

23

24

1    AR 26-27 (emphasis added). Plaintiff argues these were not germane reasons for discounting Ms.

2    David's opinion. Dkt. 9, p. 7. The Court disagrees.

3         Therapists are considered "other sources," rather than "acceptable medical sources"

4    under Social Security regulations. *See*  20 C.F.R. §§ 404.1513(d)(1) & (3). Thus, the ALJ only

5    needs to provide arguably germane reasons to reject their testimony. *Turner v. Comm'r of Soc.*

6    *Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

7    Nonetheless, "other" medical sources are able to provide evidence about "the severity of

8    [Plaintiff's] impairment(s) and how it affects [Plaintiff's] ability to work." 20 C.F.R. §

9    404.1513(d). *See also Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014).

10        Plaintiff argues the ALJ erred because "Ms. David's opinion is not limited to the effects

11   [of] bipolar disorder. It also addresses the effects of Ms. Kodama's cognitive problems that

12   began in March 2012 as well." Dkt. 9, p. 7. However, Ms. David  explicitly states: "I have

13   known Ms. Kodama for almost nine years and certainly can attest to her having made sincere

14   efforts over the years to work, and that she has been sincerely devastated by frustration and

15   hopelessness with this, and *her bipolar condition making this not possible for any sustained*

16   *amount of time*." AR 857 (emphasis added). The ALJ correctly observes this statement is

17   inaccurate; despite Ms. David's opinion that Plaintiff's bipolar disorder prevented her from

18   working "over the years," Plaintiff's earning records establish she was able to work as a grant

19   writer for over fifteen years with her bipolar disorder, which was well-controlled with

20   medication. AR 194-201, 751, 834. The fact Ms. Davis' opinion relies on incorrect information

21   is a germane reason for discounting her opinion, and the ALJ acted reasonably in doing so. *See*

22   *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Fair*, 885

23   F.2d at 605. Further, to the extent Plaintiff argues Ms. David's opinion could have been

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 12

1    interpreted differently, the ALJ's interpretation of Ms. David's opinion was rational and

2    reasonable, and therefore the Court should not disturb it. *Rollins v. Massanari*, 261 F.3d 853, 857

3    (9th Cir. 2001).

4         The ALJ's other reasons for discounting Ms. David's opinion are not well supported.

5    First, while Ms. David's status as an "other source" is a germane reason for an ALJ to give an

6    acceptable medical source's opinion greater weight, it is not a reason, in and of itself, to discount

7    her opinion. 20 C.F.R. § 404.1513(d). *See also Garrison*, 759 F.3d at 1023, Social Security

8    Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939, at *5. Second, as discussed more

9    thoroughly in Section II(B)(2), below, Plaintiff's activities of daily living are not inconsistent

10   with Plaintiff's claims of cognitive impairments. However, in light of the ALJ's other germane

11   reason for discounting Ms. David's opinion, any error in these reasons cited by the ALJ was

12   harmless. *See Molina*, 674 F.3d 1104, 1115-17.

13        As the ALJ incorporated all of the credible limitations opined to by Dr. Parker and Dr.

14   Keyes into the residual functional capacity, and as the ALJ provided legally sufficient reasons

15   for giving little weight to the opinions of Dr. Podemski and Ms. David, the ALJ did not err in

16   evaluating the medical opinion evidence.

17   
     II.   Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
18         Substantial Evidence, for Finding Plaintiff Not Fully Credible.

19        **A. Standard**

20        If an ALJ finds a claimant has a medically determinable impairment which reasonably

21   could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

22   ALJ may reject the claimant's testimony only "by offering specific, clear and convincing

23   reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12

24

1   F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility

2   for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

3   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7

4   (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

5   rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence

6   in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair v.*

7   *Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

8   Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of

9   which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the

10  Court may not reverse a credibility determination where that determination is based on

11  contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

12  That some of the reasons for discrediting a claimant's testimony should properly be discounted

13  does not render the ALJ's determination invalid, as long as that determination is supported by

14  substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

15          **B.  Application of Standard**

16          At the hearing, Plaintiff testified to frequent, painful headaches (AR 58), a range of

17  deficits in cognition, including diminished pace, memory loss, and poor concentration (AR 48-

18  58), and severe depression (AR 57). The ALJ found Plaintiff's medically determinable

19  impairments could reasonably be expected to cause the alleged symptoms, but found the

20  claimant's statements concerning the "intensity, persistence, and limiting effects of these

21  symptoms are not entirely credible[.]" AR 21. Plaintiff alleges all of the five reasons the ALJ

22  identified for discounting her subjective symptom testimony were not clear and convincing

23  reasons, nor were they supported by substantial evidence. The Court disagrees.

24

344f5d914fa1ed65

1  First, the ALJ found the objective medical evidence in the record contradicted Plaintiff's

2  testimony concerning the severity of her headaches, her cognitive deficits, and her depression

3  and anxiety. AR 21-22. This was proper. *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d

4  1294, 1297 (9th Cir. 1998). "While subjective pain testimony cannot be rejected on the sole

5  ground that it is not fully corroborated by objective medical evidence, the medical evidence is

6  still a relevant factor in determining the severity of the claimant's pain and its disabling effects."

7  *See Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). Though Plaintiff claims her

8  chronic migraine headaches resulted from March, 2012 head injury, the ALJ noted MRIs and CT

9  scans conducted in the weeks following her head injury demonstrate no evidence of trauma. AR

10  401, 403. The ALJ cited longitudinal examinations between March, 2012 and December, 2013

11  which reflect essentially unremarkable neurological findings. *See* AR 289, 302, 331, 345, 473-

12  79, 580, 640. Also, many of the medical records the ALJ cites reflect Plaintiff's cognitive

13  deficits are unrelated to her March, 2012 head injury, and reflect Plaintiff had a mix of low,

14  average, and high scores on various cognitive measures (low average full scale IQ score, average

15  verbal comprehension index, borderline perceptual reasoning, low average working memory, and

16  high average processing speed index score). AR 766, 773, 799, 824-26.  Finally, the ALJ noted

17  Plaintiff's performance on depression screening devices reflect Plaintiff's depression and anxiety

18  were mild to moderate in severity. AR 23-24, 716, 725-26, 730, 732, 734, 736, 738, 740, 744,

19  748, 750, 760.

20      Plaintiff contends the medical records cited by the ALJ do not undermine Plaintiff's

21  testimony . However, the ALJ did not dispute Plaintiff was experiencing headaches or cognitive

22  deficits. *See* AR 21-22. Instead, the ALJ considered Plaintiff's essentially unremarkable

23  objective neurological findings as contradicting the severity of Plaintiff's symptoms. AR 21. *See*

24

1  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (finding an ALJ did not have to conclude a

2  plaintiff was disabled simply because the ALJ finds the claimant "has an ailment reasonably

3  expected to produce some pain . . . [M]any medical conditions produce pain not severe enough to

4  preclude gainful employment."). Taken with the ALJ's other reasons for discounting Plaintiff's

5  testimony, discussed below, the objective medical evidence constitutes a clear and convincing

6  reason for the ALJ to find Plaintiff's migraines and cognitive deficits were less severe than

7  alleged. AR 21.

8         Second, the ALJ discounted Plaintiff's testimony concerning the severity of her

9  headaches because they improved with treatment. AR 21. The ALJ noted Plaintiff's headaches

10 responded well to conservative treatment modalities such as over-the-counter medications, ice

11 packs, massage, and acupuncture, and the fact many of her severe headache symptoms, such as

12 nausea, vomiting, and dizziness, have abated over time.  AR 21, 331, 341, 344, 595, 844. A

13 treatment's effectiveness is relevant in determining the severity of a claimant's symptoms, and

14 the ALJ was entitled to rely upon that evidence in assessing Plaintiff's credibility. 20 C.F.R. §

15 404.1529(c)(3)(iv) and (v); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008);

16 *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). *See also*

17 *Naanos v. Barnhart*, 141 Fed.Appx. 592, 593 (9th Cir. 2005) ("the ALJ properly rejected

18 Naanos' pain testimony regarding his migraines, finding that the migraines responded to

19 treatment."). *Cf. Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir 2006)

20 (noting that the critical question for assessing whether a claimant was no longer entitled to

21 benefits was not whether he still had the medical condition which led to his initial disability, but

22 whether "the severity of the problem had decreased sufficiently to enable him to engage in

23 gainful activity").

24

1    Third, the ALJ discounted Plaintiff's testimony concerning her headaches because he

2  found it to be inconsistent with her activities of daily living. AR 22. The ALJ noted Plaintiff

3  initially could not read, write, drive, or use the computer, as Plaintiff had repeatedly reported

4  these activities were triggers for her headaches. AR 22, 334, 490, 503, 516, 543. However, the

5  ALJ cited numerous instances in the record where Plaintiff reported engaging in those same

6  activities. AR 334, 520-21, 643-45, 647, 684-89, 720-25 796, 814. Inconsistencies between a

7  claimant's testimony concerning his limitations and the claimant's activities of daily living are

8  clear and convincing reasons, supported by substantial evidence, for discrediting a claimant's

9  testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Further, in his discussion of

10  Plaintiff's testimony concerning her headaches, the ALJ cited records indicating Plaintiff's other

11  activities include Zumba lessons, and volunteering with English as a Second Language (ESL)

12  students and helping them study for the citizenship test. AR 473, 482, 505, 508, 509, 516, 520,

13  542, 567, 579, 757. The ALJ correctly observes Plaintiff did not disclose these activities during

14  her live testimony, and found this negatively impacted her credibility. AR 22, 46, 47. *See Fair*,

15  885 F.2d at 604, n. 5 (9th Cir. 1989).

16    Fourth, the ALJ also cites Plaintiff's activities of daily living as a basis for discounting

17  her cognitive deficits. AR 23.  Rather than citing Plaintiff's activities of daily living for their

18  *inconsistency* with Plaintiff's testimony, however, the ALJ indicates Plaintiff's activities of daily

19  living demonstrate she retains the ability to perform "simple, routine tasks that require little or no

20  judgment and that can be learned in a short period." AR 23. Specifically, the ALJ noted:

21    [D]espite her cognitive deficits, the record indicates that [Plaintiff] has been able
    [sic]carry  out routine activities. For instance, she has reported being able to care

22    for her personal hygiene and grooming without needing reminders, take medicine
    without reminders, prepare simple meals daily such as sandwiches and frozen

23    dinners and sometimes more complex complete meals, perform household chores
    such as cleaning, doing laundry, and gardening, and shop for groceries twice per

24

week. She can drive within her vicinity and use public transportation. She has problems managing her finances initially, but now it is okay. She attends fitness classes three to four times per week, writes frequent emails to her providers, and goes to the church and community center regularly. [AR 241-52, 473, 482, 505, 508, 516, 520, 542, 579, 720, 746]. Furthermore, she teaches immigrants English and helps them study for the citizenship test [AR 567, 757, 844], an activity that inherently requires some amount of cognitive function.

AR 23.

"[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639. To base an adverse credibility determination upon a claimant's activities of daily living, the ALJ must either explain how the claimant's activities are inconsistent with his or her testimony, or must explain how the activities of daily living meet "the threshold for transferable work skills." *Id. See also Fair*, 885 F.2d at 603 (holding an ALJ may properly base an adverse credibility finding on activities of daily living "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"). "The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 681 (*quoting Burch v. Barnhart*, 400 F.3d. 676, 681 (9th Cir. 2005).

Here, the ALJ did not make findings as to how Plaintiff's home activities could be transferred to "what may be the more grueling environment of the workplace[.]" *Fair*, 885 F.2d at 603. *See also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative

law judges in social security disability cases."). Nor is it self-evident from the activities the ALJ describes that they would naturally transfer to a work setting.  The mere fact Plaintiff has demonstrated an ability to run errands several hours per week, for example, does not demonstrate she would be able to sustain that level of focus and attention throughout a full eight hour work day or forty-hour work week. Also, the ALJ cited Plaintiff's volunteer work with immigrants seeking to learn English as an activity which "inherently requires some amount of cognitive function." AR 23. However, the fact Plaintiff retains "some amount" of cognitive function is not a clear and convincing reason to discount Plaintiff's testimony; Plaintiff need not be "utterly incapacitated" to be found disabled. *Fair*, 885 F.2d at 603. Without an explanation as to how these activities transfer to a work environment, Plaintiff's activities of daily living do not constitute a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony concerning her cognitive deficits.

Even if the ALJ had cited Plaintiff's daily activities because they were allegedly inconsistent with her testimony, the record does not support this conclusion. Plaintiff's performance of her daily activities was more qualified than the ALJ's description would suggest. For example, though the ALJ cites Plaintiff's function report for the proposition Plaintiff was able to feed her dog and take her medication, Plaintiff testified she has periodically forgotten to feed her dog, and on at least one occasion, took her dog's medication instead of her own. AR 52-53. Though the ALJ cited records indicating Plaintiff could shop for groceries, the record also reflects Plaintiff sometimes needed help while grocery shopping. AR 334-45. The record also contains numerous references to Plaintiff's forgetfulness, slow thought process, and comprehension difficulties. AR 51-54, 183, 204, 207, 245, 334-35, 447, 752.

1    Because Plaintiff's activities of daily living were not a clear and convincing reason,

2    supported by substantial evidence, for discounting Plaintiff's testimony concerning her cognitive

3    deficits, the ALJ erred. However, in light of the ALJ's other clear and convincing reasons,

4    supported by substantial evidence, for finding Plaintiff not credible, this error is harmless. *See*

5    *Molina*, 674 F.3d at 1115-17; *Carmickle*, 533 F.3d at 1162-63; *Batson v. Comm'r, Soc. Sec.*

6    *Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) .

7    Fifth, the ALJ noted Plaintiff's bipolar disorder has historically been stable with

8    medication, and did not previously interfere with her ability to work. AR 23, 194-201, 751, 834.

9    As with Plaintiff's headaches responding to treatment, the fact Plaintiff's depression was

10   controlled with medication is a clear and convincing reason to discount Plaintiff's testimony.

11   *Tommasetti*, 533 F.3d at 1039-40; *Morgan*, 169 F.3d at 599-600.

12   Because the ALJ offered clear and convincing reasons, supported by substantial

13   evidence, for discounting Plaintiff's testimony, the ALJ did not err in evaluating Plaintiff's

14   credibility.

15   III.   Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence
            in the Record.

16

17   In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be

18   disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting*

19   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR

20   06-03p, *available at* 2006 WL 2329939 at \*2. However, an ALJ may discredit a lay witness'

21   testimony with specific reasons "germane to each witness." *Bruce,* 557 F.3d at 1115; *Turner,* 613

22   F.3d at 1224.

23   The ALJ considered letters from six of Plaintiff's family and friends: her sister, Cheri

24   Brown (AR 261), her aunt, Astha Tada (AR 262), her pastor, Paul Smith (AR 264), and her

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 20

friends, Jeri Finch (AR 263), Mary McCoy (AR 265), and Leslee Lemka (266). The lay

witnesses indicated Plaintiff continued to have difficulty driving, could not perform her past

relevant work as a grant-writer, and had frequent memory lapses, because of her ongoing

headaches, depression, and cognitive symptoms. AR 261-66. For example, Ms. Brown, Ms.

Tada, Ms. Finch, and Ms. McCoy all testified Plaintiff was unable to drive beyond her local area

due to her debilitating headaches. AR 261-63, 265. Ms. Brown, Ms. Tada, Ms. Finch, and Ms.

Lemka also testified to Plaintiff's ongoing concentration difficulties, difficulty reading, and

generally declining cognitive state. AR 261-63, 266.

       The ALJ gave some weight to the letters provided by Ms. Brown, Ms. Tada, Ms. Finch,

and Ms. McCoy, and limited weight to the letters provided by Mr. Smith and Ms. Lemka. In all

cases, the ALJ gave less than full weight to the lay witness statements for essentially the same

reasons he discounted the opinions of Ms. David and Dr. Podemski: the lay witness testimony

was inconsistent with the medical evidence, as well as inconsistent with Plaintiff's activities of

daily living. *See* AR 24-25.  For instance, in response to Ms. Lemka and Ms. McCoy's letters

indicating Plaintiff had difficulty with reading, the ALJ noted Plaintiff had been reading large

print, using the computer, and writing e-mails. AR 25. In response to Ms. Brown, Ms. Tada, and

Ms. Finch's letters describing an array of deficiencies, the ALJ noted the letters are inconsistent

with Plaintiff's Zumba classes, volunteering with immigrants in teaching them English and

studying for the citizenship test, and noted Plaintiff's headaches improved with conservative

treatment. AR 24-25. Finally, the ALJ discounted Mr. Smith's letter, in part, because Plaintiff

has been able to drive within her general vicinity up to 6 to 10 miles, despite Mr. Smith's letter

indicating her church continues to arrange rides for her. AR 25. These were germane reasons for

1    discounting the lay witness testimony. *Valentine*, 574 F.3d at 694, *Bayliss,* 427 F.3d at 1218,

2    *Lewis,* 236 F.3d at 511. Thus, the ALJ did not err in evaluating the lay witness testimony.

3        IV.    <u>Whether the ALJ Erred by Finding Plaintiff was Capable of Performing Work
     Existing in Substantial Numbers in the National Economy.</u>

4

5            If a claimant cannot perform his or her past relevant work, at step five of the disability

6    evaluation process the ALJ must show there are a significant number of jobs in the national

7    economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999);

8    20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a

9    vocational expert or by reference to defendant's Medical-Vocational Guidelines. *Osenbrock v.*

10   *Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

11           An ALJ's findings will be upheld if the weight of the medical evidence supports the

12   hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987);

13   *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony

14   therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See*

15   *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the

16   claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.*

17   (citations omitted). The ALJ, however, may omit from the description those limitations he or she

18   finds do not exist. *See Rollins*, 261 F.3d at 857.

19           Plaintiff argues the ALJ's hypothetical to the vocational expert did not accurately reflect

20   all of her limitations, including limitations in pace, difficulty learning, and need for assistance or

21   special supervision recommended by Dr. Parker and Dr. Keyes. However, as discussed in

22   Sections I and II, above, the ALJ did not err in evaluating the medical opinion evidence or in

23   evaluating Plaintiff's credibility. Further, the ALJ's residual functional capacity finding

24   contained all credible limitations from the medical opinion evidence and Plaintiff's testimony.

1   Therefore, the ALJ's hypothetical to the vocational expert was not in error. *See Stubbs-*

2   *Danielson*, 539 F.3d at 1175-76.

3        Next, Plaintiff argues the restrictions to simple, routine, repetitive tasks and the ability to

4   follow short, simple instructions contained in the residual functional capacity are inconsistent

5   with, and more limited than, a Level Two Reasoning Ability. Dkt. 9, p. 18. Based on the

6   Vocational Expert's testimony, the ALJ found Plaintiff would be able to perform jobs such as

7   Janitor, Airplane Cleaner, Hand Packager, and Box Bender. AR 28 (*citing Dictionary of*

8   *Occupational Titles* ("*DOT*"), Packager-Hand, § 920.587-018, *available at* 1991 WL 687916;

9   *DOT*, Janitor, § 381.687-014, *available at* 1991 WL 673257; *DOT*, Airplane Cleaner, § 919.687-

10  014, *available at* 1991 WL 687897; *DOT*, Box Bender, § 641.687-010, *available at* 1991 WL

11  685611. Two of these four jobs (Airplane Cleaner and Hand Packager) require Level Two

12  reasoning. According to the Dictionary of Occupational Titles, Level Two Reasoning is defined

13  as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved

14  written or oral instructions. Deal with problems involving a few concrete variables in or from

15  standardized situations." *DOT*, Packager-Hand, § 920.587-01, *available at* 1991 WL 687916.

16       The Ninth Circuit, however, has previously found no inconsistency between level two

17  reasoning and a limitation to simple, repetitive tasks with short, simple instructions. *Rounds v.*

18  *Comm'r, Soc. Sec. Admin.*807 F.3d 996, 1004, n. 6 (9th Cir. 2015)(*citing Abrew v. Astrue*, 303

19  Fed.Appx. 567, 569-70 (9th Cir. 2008); *Lara v. Astrue*, 305 Fed.Appx. 324). *See also Zavalin v.*

20  *Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (noting a claimant's residual functional capacity to

21  simple, routine, and repetitive tasks was consistent with Level Two reasoning); *Ranstrom v.*

22  *Colvin*, 522 Fed.Appx. 687, 688-89 (9th Cir. 2015) ("There is no appreciable difference between

23  the ability to make simple decisions based on 'short, simple instructions" and the ability to use

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 23

1    commonsense understanding to carry out 'detailed *but uninvolved* . . . instructions," which is

2    what Reasoning Level 2 requires."). In any event, Plaintiff has failed to show harm, as two of the

3    four opined jobs (Janitor and Box Bender) only require Level One Reasoning. *See DOT*, Janitor,

4    § 381.687-014, *available at* 1991 WL 673257*; DOT*, Box Bender, § 641.687-010, *available at*

5    1991 WL 685611. Plaintiff's limitations to simple, repetitive routine tasks with short, simple

6    instructions adequately capture the requirements of Level One Reasoning. *See also Zavalin*, 778

7    F.3d at 847; *Ranstrom*, 522 Fed.Appx. at 688-89.

8           Plaintiff also argues all the jobs identified by the ALJ were classified as heavy or medium

9    work, and "[i]t appears inconsistent with Social Security policy to expect a 62 year old woman

10   measuring 5 feet 2 inches . . . to perform heavy or medium work for the first time in her life."

11   Dkt. 9, p. 18. However, as both the ALJ and the Commissioner correctly note, "age and body

12   habitus," are not relevant factors in assessing a claimant's residual functional capacity. SSR 96-

13   8p, *available at* 1996 WL 374184, at *1. Indeed, social security ruling SSR 96-8p explicitly

14   states "it is incorrect to find that an individual has limitations or restrictions beyond those caused

15   by his or her medical impairment(s) including any related symptoms, such as pain, due to factors

16   such as age or height, or whether the individual had ever engaged in certain activities in his or

17   her past relevant work." *Id.* Thus, provided Plaintiff's specific medically determinable

18   impairments do not impose exertional limitations, the fact Plaintiff is 62 years old and 5 feet 2

19   inches in height has no bearing on her residual functional capacity or on the availability of jobs

20   which exist in significant numbers in the national economy.

21          Finally, Plaintiff argues there are not a "significant number" of box bender jobs available

22   in the national or local economy. Dkt. 9, p. 18. However, even assuming this is error, any error is

23   harmless. The ALJ and the Vocational Expert also cited three other jobs with substantially higher

24

1  numbers of jobs in the national and local economies, none of which Plaintiff claims are not a

2  "significant number." Dkt. 9, p. 18. *See Molina*, 674 F.3d 1104, 1115-17 (noting the court will

3  not reverse an error which is "inconsequential to the ultimate nondisability determination").

4        Plaintiff has failed to demonstrate how the Vocational Expert's testimony concerning

5  Plaintiff's ability to perform the jobs of Janitor, Box Bender, Airplane Cleaner or Hand Packager

6  was error. Therefore, the ALJ's findings at Step Five should be affirmed.

7  <u>**CONCLUSION**</u>

8        Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

9  did not err in evaluating the medical opinion evidence, evaluating Plaintiff's credibility,

10  evaluating the lay witness testimony, and in finding there were a significant number of jobs in

11  the national and local economies Plaintiff could perform. The undersigned recommends this

12  matter be affirmed, pursuant to sentence four of 42 U.S.C. § 405(g). The undersigned also

13  recommends judgment be entered for Defendant and the case closed.

14        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

15  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

16  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

17  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

18  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 13, 2016,

19  as noted in the caption.

20        Dated this 26th day of April, 2016.

21

22

23  David W. Christel
    United States Magistrate Judge

24